IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JOHNNY THOMAS ORTIZ II, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*,<br><br>Defendants. | Civil Action No.: 5:24-cv-420<br><br>**PLAINTIFFS MEMO ISO EMERGENCY MOTION FOR PRELIMINARY INJUNCITON** |

**INTRODUCTION AND FACTUAL BACKGROUND**

In a politically divisive time, the North Carolina State Board of Elections (the "NCSBE" or "the Board") opted to place politics over their statutory obligations and silence individuals who disagree with the politics of the majority of the NCSBE's board members. At all times relevant to this matter, there has been no genuine dispute between the parties that the Justice for All Party of North Carolina ("JFA") has timely complied with all applicable state law requirements to qualify as a new political party under N.C. GEN. STAT. § 163-96(a)(2) and place its candidates on North Carolina's November 5, 2024 general election ballot pursuant to under N.C. GEN. STAT. § 163-98. Defendant NCSBE nonetheless delayed certification of JFA as a new political party, refusing to certify JFA "forthwith," as it is required to do under N.C. GEN. STAT. § 163-96(a)(2). (Complaint ¶¶ 42-53). On June 26, 2024, a divided NCSBE voted to defer the decision on whether or not to certify JFA as a new political party to a later date, despite the fact that as of that date county boards of elections had validated 17,362 signatures – 3,497 more valid signatures than required under N.C. GEN. STAT. § 163-96(a)(2). (Complaint ¶¶ 26, 50). The two Republican NCSBE members voted in favor of certification in light of the July 1, 2024 statutory deadline. But

1

all three Democratic NCSBE members voted against certification, which they characterized as a temporary decision, and unilaterally decided that they could waive the July 1, 2024 statutory deadline in N.C. GEN. STAT. § 163-98 and decide certification at a later date, pending an investigation prompted by submissions from a Super PAC called Clear Choice Action[1]. (Complaint ¶¶ 31-39). The NCSBE ultimately denied certification on July 16, 2024 in a 3-2 partisan line vote. (Complaint ¶¶ 63-68). The NCSBE cited no legal authority for its failure to certify JFA as a new political party. Moreover, the NCSBE cited no applicable statutory provision, regulation or other legal requirement with which JFA failed to comply.

On the contrary, the NCSBE's refusal to certify appears to be related on its insistence to treat JFA as a second-class group, subjecting JFA and its advocates to different treatment and standards than others. (Complaint ¶¶ 43-66).The discussion of JFA's petitions began with Chairman Hirsch attempting to place JFA Chair Italo Medelius under oath, despite his objection and the fact that the Board had allowed other potential party representatives to choose whether or not they would testify under oath in the same meeting. (Complaint ¶¶ 43; June 26, 2024 Board Meeting at 1:18:25 – 1:27:26). Prior to asking Mr. Medelius any substantive questions, Chairman Hirsh requested that a video from Twitter/X, originally submitted by Clear Choice Action, be played wherein an alleged circulator by the name of Scott Presler stated that the alleged purpose of the petition was "to take away votes from Joe Biden." (Complaint ¶¶ 44).

JFA was subjected to the same type of accusations in the July 16, 2024 NCSBE meeting where Chairman Hirsch decided that a random polling of 250 individuals out of the over 17,141

---

[1] Clear Choice Action is Super PAC, created by supporters of President Biden, that is "aimed at stopping any third-party or independent candidates from gaining traction before the November Election." Michael Scherer, *Biden allies form new group to coordinate attacks on third-party candidates*, Wash. Post (Mar. 14, 2024), https://www.washingtonpost.com/politics/2024/03/14/biden-third-party-super-pac/.

signatories, in which NCSBE only reached 49[2] individuals, could be used to discredit over half of the over 17 thousand signatures—despite the fact that the County Boards of Election had already certified petitions. (Complaint ¶¶ 61).Unfortunately, history repeats itself, as the NCSBE engaged in the same conduct in 2022. In fact, the Board was publicly admonished by a federal judge for failing to timely conduct its investigation, thereby prejudicing the Green Party. *See NC Green Party v. N State Bd. of Elections*, 620 F. Supp. 3d 407, 411, 414-15 (E.D.N.C. 2022) (noting that the Board failed to conduct the bulk of its investigation until after its June 30 vote not to certify the Green Party, and noting that the Democratic Senatorial Campaign Committee ("DSCC") and North Carolina Democratic Party[3] instigated a significant delay in the certification process). Two years later, the Board is engaging in the same unlawful conduct.

Plaintiffs filed this action on July 22, 2024 to vindicate rights guaranteed to them by the First and Fourteenth Amendments to the United States Constitution, including their rights to cast their votes effectively, to speak and associate for political purposes, to grow and develop their political party, to petition, and their right to due process of law. (Complaint ¶¶ 72-80). Plaintiffs also file the instant emergency motion for preliminary injunctive relief to respectfully request that the Court enter an order that: (1) directs NCSBE to certify JFA as a new party entitled to place its candidates on North Carolina's November 5, 2024 general election ballot pursuant to N.C. GEN. STAT. § 163-96(a)(2); (2) enjoins NCSBE from enforcing the July 1, 2024 deadline prescribed by

---

[2] Of the 49 individuals, 18 said they did not sign the petition, 3 said they did not recall signing the petition, and 28 acknowledged that they signed the petition and were asked follow-up questions. The results of NCSBE's poll can be found here: The full documentation for the polling survey can be found here: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-07-16/New%20Party%20Petitions/SBE%20Inquiry/Summary%20Calls%20to%20JFA%20Signers%20at%20Random.pdf

[3] Significantly, the Elias Law Group represented the intervenor defendants, DSCC and North Carolina Democratic Party, in the *North Carolina Green Party v. North Carolina State Board of Elections* matter and also now represent Clear Choice Action. .

3

N.C. GEN. STAT. § 163-98 against JFA; and (3) directs NCSBE to take any and all other action necessary to ensure the inclusion of JFA's candidates, including Dr. Cornel West, on North Carolina's November 5, 2024 general election ballot.

## LAW AND ARGUMENT

### I. Standard of Review and Applicable Law

Plaintiffs seeking a preliminary injunction must establish that: "(1) they are likely to succeed on the merits of their claim, (2) they are likely to suffer irreparable harm without an injunction, (3) the balance of equities tilts in their favor, and (4) issuing an injunction is in the public interest." *NC State Conf. of NAACP v. Raymond*, 981 F.3d 295, 302 (4th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Challenges to the constitutionality of state election laws, including as-applied challenges to their manner of enforcement, are analyzed under the "*Anderson-Burdick*" framework. *See Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 175 (4th Cir. 2017) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)). Under that analysis:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors in the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* (quoting *Anderson*, 460 U.S. at 789).

*Burdick* redefined the framework announced in *Anderson* by specifying that "the 'rigorousness' of the inquiry 'depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights.'" *Id.* (quoting *Burdick*, 504 U.S. at 434). Accordingly, state laws that impose "'reasonable, nondiscriminatory restrictions upon … First and Fourteenth

4

Amendment rights' [are] generally justified by 'the State's important regulatory interests.'" *Id.* (quoting *Burdick*, 504 U.S. at 434). By contrast, state laws that impose "'severe' restrictions must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id*. (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). Moreover, the Supreme Court has emphasized that in every case, "[h]owever slight [the] burden may appear … it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman*, 502 U.S. at 288-89).

## II. Plaintiffs Are Entitled to the Requested Relief Because They Satisfy All Four Elements of the Preliminary Injunction Test.

Plaintiffs are likely to prevail on the merits of their claims because the Board's application of N.C. GEN. STAT. § 163-96(a)(2) and N.C. GEN. STAT. § 163-98 (together, the "Political Party Statutes"), as applied by the NCSBE here, cannot withstand scrutiny under the *Anderson-Burdick* analysis. The NCSBE's Political Party Statutes denial of JFA's certification as a new party and the consequential exclusion of its candidates from North Carolina's general election ballot despite JFA's and its candidates' full compliance with their substantive terms severely burdens Plaintiffs' core First Amendment rights and violates their right to due process of law. NCSBE cannot assert any legitimate state interest that is served by its denial of ballot access to a party and its candidates who fully complied with all applicable requirements under state law. Such denial has plainly caused Plaintiffs irreparable harm, and it continues to do so each day it is permitted to persist. Furthermore, it is clear that the NCSBE through Chairman Hirsch is determined to treat JFA and its supporters as second-class citizens, unworthy of the neutral implementation of the Board's quasi-judicial rules designed to ensure due process. The balance of equities and public interest also weigh decisively in favor of granting Plaintiffs the requested relief.

**A.     Plaintiffs Are Likely to Prevail on the Merits Because the NCSBE's Application of the Political Party Statutes Cannot Withstand *Anderson-Burdick* Scrutiny.**

Under the first step in the *Anderson-Burdick* analysis, the Court must address the "character and magnitude" of the burden on a plaintiff's First and Fourteenth Amendment rights. *Anderson*, 460 U.S. at 789. Here, there can be no doubt that the imposed burden is severe. NCSBE denied Plaintiffs ballot access despite their full compliance with all applicable requirements under state law.

**1.     NCSBE's Application of the Political Party Statutes Severely Burdens Plaintiffs' First Amendment Rights.**

The NCSBE's application of the Political Party Statutes, harm Plaintiffs as voters. With respect to the rights of voters, the Supreme Court has recognized that state laws restricting ballot access burden "two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "Both of these rights," the Court found, "rank among our most precious freedoms." *Id*.

While the Supreme Court has not attached the same "fundamental status" to the rights of candidates, it has recognized that candidates' rights and voters' rights "do not lend themselves to neat separation[.]" *Bullock v. Carter*, 405 U.S. 134, 143 (1972). That's because "laws that affect candidates always have at least some theoretical, correlative effect on voters." *Id.* Of particular concern are laws and rulings "tending to limit the field of candidates from which voters might choose." *See id*. As the Supreme Court explained in *Anderson*, "the exclusion of candidates … burdens voters' freedom of association, because … a candidate serves as a rallying point for like-minded citizens." *Anderson*, 460 U.S. at 787-88.

6

Finally, the Supreme Court has recognized "the constitutional right of citizens to create and develop new political parties." *Norman*, 502 U.S. at 288. This right "derives from the First and Fourteenth Amendments, and advances the constitutional interest of likeminded voters to gather in pursuit of common political ends[.]" *Id*. Further, this right is "an integral part of [the] basic constitutional freedom" to associate for the "advancement of political beliefs and ideas." *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973).

The NCSBE's unjustified application of the Political Party Statutes to deny JFA and its candidates' ballot access severely burdens each of the foregoing rights. As the Supreme Court explained, "the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams*, 393 U.S. at 31. Laws that exclude candidates from the ballot "burden[] voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for likeminded citizens." *Anderson*, 460 U.S. at 787-88. Such laws severely burden voters' right "to cast their votes *effectively*" – meaning for a candidate that represents their preferences. *See Williams*, 393 U.S. at 30; *see also Lubin v. Panish*, 415 U.S. 709, 716 (1974) ("It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues.").

Similarly, the NCSBE's application of the Political Party Statutes to exclude JFA's candidates severely burdens the candidates' rights. They cannot serve "as a rallying point" for the JFA voters with whom they wish to associate if they are unable to appear on the ballot. *Anderson*, 460 U.S. at 787-88; *see also Lubin*, 415 U.S. at 716; *cf. Dixon v. Md. State Admin. Bd. of Election Laws*, 878 F.2d 776, 782-83 (4th Cir. 1989), *abrogated in part on other grounds by Burdick*, 504 U.S. 432 (finding state's failure to report votes cast for candidates who fail to pay filing fee "of

great magnitude" because it is " no different in effect from refusing to allow them to cast their ballots in the first place.") (footnote omitted).

The NCSBE's failure to certify JFA as a new party and its exclusion of JFA's candidates from the ballot also severely burdens Plaintiffs' right to create and develop their political party. *See Norman*, 502 U.S. at 288. "The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes." *Williams*, 393 U.S. at 31. Indeed, "a basic function of a political party is to select candidates for public office to be offered to the voters at general elections." *Kusper*, 414 U.S. at 58. By thwarting JFA from fulfilling that basic function here, the NCSBE "substantially abridged" the associational rights of all voters who seek to support JFA.

Relatedly, the NCSBE's failure to certify JFA as a new party severely burdens yet another right – that of the tens of thousands of voters who signed JFA's petitions in an effort to qualify it for the ballot. The Supreme Court has found that the act of signing a petition to qualify a new party for the ballot is an "exercise [of] the political franchise" that is tantamount to voting in a primary election. *Am. Party of Tex. v. White*, 415 U.S. 767, 785 (1974) (citation omitted). By refusing to certify JFA as a new party, NCSBE has thus disenfranchised the thousands of North Carolina voters who signed JFA's petitions. *See id*.

> **2. The Political Party Statutes, as Interpreted and Applied by the Board Are Not Narrowly Tailored to Further Any Legitimate State Interest.**

Because the Political Party Statutes, as applied by the NCSBE, impose severe burdens on Plaintiffs' First Amendment rights, they cannot withstand scrutiny under the *Anderson-Burdick* analysis unless the NCSBE can show they are "'narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman*, 502 U.S. at 289). The

8

NCSBE cannot make that showing. No court has recognized that states have a compelling or even legitimate interest in denying ballot access to candidates or parties who comply with the state's ballot access requirements. Nor does such state interest exist here.

Furthermore, even if the NCSBE could identify a compelling state interest that is served by its failure to certify JFA as a new party – and it cannot – the NCSBE cannot show that the Political Party Statutes, as applied here, are narrowly tailored. On the contrary, as construed by the NCSBE, the Political Party Statutes imbue it with unfettered discretion to deny certification to any party, despite the party's timely compliance with their requirements. The NCSBE would have this Court believe that the Political Party Statutes further permit them to do so based on nothing more than "questions" any third-party submission raises about the party's compliance, without giving the party any notice or opportunity to address those questions and prove its compliance. In effect, the Political Party Statutes, as interpreted by the NCSBE, grant it a blank check—to deny certification to any party at any time—including beyond the July 1 statutory deadline. The Democratic majority of the Board repeatedly questioned the petition signatures, as well as the purpose and intent, of the JFA party based upon submissions from Clear Choice Action. But that is not within the NCSBE's prerogative. The statute clearly provides that the County Boards of Election handle the verification process. N.C. Gen. Stat. § 163-98(c). Construing the Political Party Statutes as allowing NCSBE to deny certification of a new party based upon submissions from outside interest groups like Clear Choice Action, or even a post on Twittter/X, is not even remotely tailored to serve any state interest. Moreover, it could subject the Board to the very manipulation that Ms. Millen seemed concerned about. (Complaint ¶47). Such an interpretation clearly fails the *Anderson-Burdick* test.

## B. Plaintiffs Are Likely to Prevail on the Merits Because the NCSBE's Interpretation and Application of the Political Party Statutes Violates Plaintiffs' Right to Due Process of Law.

The Supreme Court has long recognized that "it is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberty assured by the Due Process Clause of the Fourteenth Amendment . . . ." *Anderson*, 460 U.S. at 787 (citation and quotation marks omitted). In 2022, NCSBE attempted to prejudice the Green Party in a similar manner that it is currently harming JFA.[4] *See NC Green Party*, 620 F. Supp. 3d at 407, 414-15. In that case, NCSBE failed to timely certify the Green Party and used its own actions that prevented timely certification as the basis to exclude the Green Party's candidates from the ballot. *Id.* at 413. In finding that NCSBE's "inability to change or waive the deadline when a party does, in fact, timely meet the requirements in N.C. GEN. STAT. § 163-96(a)(2), but is certified after the deadline, severely burdens ballot access," the district court stated as follows:

> North Carolina has compelling interests in authorizing the Board to properly determine the sufficiency of petitions submitted to it and to authorize the Board to investigate petition fraud. N.C. GEN. STAT. §§ 163-22(d), 163-96(a)(2). But once the Board has made a final decision to certify a party under N.C. GEN. STAT. § 163-96(a)(2), those interests become less compelling because the Board has determined the sufficiency of the petitions. Moreover, such a decision indicates that any further investigation into matters such as fraud is no longer connected to the Board's duty to determine the sufficiency of the petitions for purposes of party certification under N.C. GEN. STAT. § 163-96(a)(2). After all, the Board has made its decision. Thus, these interests are the most compelling pre-certification.

*See NC Green Party v. NC State Bd. of Elections*, 619 F. Supp. 3d 547, 566-67 (E.D.N.C. 2022).

Here, the NCSBE also violated Plaintiffs' right to *procedural* due process. "Procedural due process is simply a guarantee of fair procedures," *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), "—typically, notice and

---

[4] Notably, one member of the Board admonished Chairman Hirsch for his actions, noting that they were similar to the Green Party issues the Board had been admonished for two years earlier. (Complaint ¶ 48).

an opportunity to be heard." *Id.* (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975)). It also requires an opportunity to cure. *See Democracy NC v. NC State Bd. of Elections*, 476 F. Supp. 3d 158, 228-228 (M.D.N.C. 2020) (analyzing whether cure procedure for absentee ballot provision was constitutionally adequate for due process challenge); *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990) (explaining "due process is not provided when the election procedures do not give some form of post-deprivation notice . . . so that any defect in eligibility can be cured . . . ."). The NCSBE failed to provide Plaintiffs with constitutionally sufficient due process. It failed to notify Plaintiffs of the evidence on which it relied upon to discredit any county board-validated signature on JFA's petitions before the July 1, 2024 statutory deadline in §163-98. Instead, it chose to rely upon unverified submissions by Democratic Party operatives to delay a predetermined outcome. (Complaint ¶¶ 42-53). JFA did not receive a full opportunity to defend its signatures in the June 26, 2024 meeting because Chairman Hirsch had predetermined the outcome. (*Id.*). Indeed, instead of giving JFA a fair hearing, NCSBE effectively ignored all of JFA's timely submissions in response to multiple requests for information and documents. (*Id.*). At no point prior to July 1, 2024 did the NCSBE provide JFA with information so that it could cure any perceived deficiencies. Instead, the NCSBE decided to wait until July 16, 2024 to deny certification of JFA as a political party and used responses of 49 signatories as pretext to discredit the 17,141 verified signatures on JFA's petitions. NCSBE's actions are therefore inimical to the fundamental requirements of procedural due process.[5]

---

[5] To be sure, the "state courts are open" to Plaintiffs, *Mora*, 519 F.3d at 230, but here, unlike in *Mora*, Plaintiffs' First and Fourteenth Amendment rights have already been violated – they have been denied ballot access for North Carolina's November 5, 2024 general election – and Plaintiffs are entitled to seek redress for those violations in federal court. *See* 28 U.S.C. § 1331; 42 U.S.C. § 1983.

11

### C. Plaintiffs Satisfy the Remaining Elements of the Preliminary Injunction Test.

The remaining elements of the preliminary injunction test – the irreparable injury to Plaintiffs in the absence of an injunction, the balance of the equities, and the public interest – all weigh decisively in Plaintiffs' favor. As to Plaintiffs' irreparable injury, the Supreme Court has long recognized that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Newsom ex rel. Newsom v. Albemarle Cnty Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As to the balance of the equities, the NCSBE "is in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation which, on this record, is likely to be found unconstitutional" as applied here. *See id*. Finally, "[s]urely, upholding constitutional rights serves the public interest." *Id*.

Plaintiffs thus satisfy all the elements necessary to warrant the issuance of a preliminary injunction. The evidence in the record amply supports that conclusion.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs' Emergency Motion for Preliminary Injunction should be granted. Further, the Court should enter an order as soon as possible, but no later than August 19, 2024[6] that: (1) directs the NCSBE to certify JFA as a new party entitled to place its candidates on North Carolina's November 5, 2024 general election ballot pursuant to N.C. GEN. STAT. § 163-96(a)(2); (2) enjoins the NCSBE from enforcing the July 1, 2024 deadline prescribed by N.C. GEN. STAT. § 163-98 against Plaintiffs; and (3) directs NCSBE to take any and all other action necessary

---

[6] Plaintiffs calculated this date to allow for ballots to be printed ahead of the September 6, 2024 deadline by which absentee ballots must be available for voting. N.C. Gen. Stat. § 163-227.10. This date is subject to change depending on additional printing information from the NCSBE, and when the Democratic Party selects their candidates for President and Vice President.

12

to ensure the inclusion of JFA's candidates, including Dr. West, on North Carolina's November 5, 2024 general election ballot.

Respectfully submitted this the 22nd day of July, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Alyssa M. Riggins
N.C. State Bar No. 52366
Cassie A. Holt
N.C. State Bar No. 56505
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3779
Phil.strach@nelsonmullins.com
Alyssa.riggins@nelsonmullins.com
Cassie.holt@nelsonmullins.com

## CERTIFICATE OF SERVICE

I, Phillip J. Strach, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system and have served the NCSBE Defendants via mail and email.

This the 22nd day of July, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456